UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONNA LITSCHGI,  Case No. 1:10-cv-811

    Plaintiff,  Dlott, J.
                                                               Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Donna Litschgi filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On January 25, 2006, Plaintiff filed her application for Disability Insurance Benefits (DIB) alleging a disability onset date of February 17, 1997, due to lumbar sprain and depression. (Tr. 131, 138-40). She was born in 1956 and was 49 years old at the time she filed her application for DIB. *Id.* After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge (ALJ). (Tr. 23-24). On January 15, 2009, Plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Deborah Smith.

1

(Tr. 536-572). A vocational expert (VE), Micha Daoud, also appeared and testified at the hearing.

On January 30, 2009, the ALJ entered her decision denying Plaintiff's DIB application. (Tr. 28-36). Upon review by the Appeals Council, the matter was remanded back to the ALJ with instructions to enter all relevant evidence into the record, clarify the weight afforded to Plaintiff's treating physician and to resolve any conflicts between the testimony of the VE and the Dictionary of Occupational Titles ("DOT"). (Tr. 39-41). October 26, 2009, Plaintiff, who was represented by counsel, appeared and testified at a supplemental hearing before ALJ Deborah Smith. (Tr. 573-594).

On November 19, 2009, the ALJ entered her decision denying Plaintiff's DIB application. (Tr. 13-22). The Appeals Council denied Plaintiff's request for review. (Tr. 5-7). Therefore, the ALJ's November 2009 decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2002.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 17, 1997 through her date last insured of March 31, 2002 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: chronic lumbar strain and mild facet arthropathy (20 CFR 404.1520(c)).

……………………..

> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)).
>
> ……………………..
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that she could perform no more than occasional overhead reaching.
>
> ……………………..
>
> 6. Through the last date insured, the claimant was capable of performing her past relevant work as an order picker/packer, sealer machine operator, bending machine operator, scanner/routing clerk, and conveyor belt picker/packer. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565).
>
> ……………………..
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 17, 1997, the alleged onset date, through March 31, 2002, the date last insured (20 CFR 404.1520(f)). The claimant is not disabled through the date of this decision.

(Tr. 15-21). Thus, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and therefore not entitled to DIB.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both

3

"medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner

4

determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) failing to give controlling weight to the opinion of Plaintiff's treating physician; 2) improperly formulating Plaintiff's RFC assessment based upon her own lay opinion; and 3) failing to find that Plaintiff's depression was a severe impairment. Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignments of error should be overruled.

*1. Weight to the treating physician*

Plaintiff's first assignment of error alleges that the ALJ erred in failing to accept the functional limitations found by her treating physician, Gary Reasor, M.D., a pain management specialist. 20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating

5

source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added). *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *See also* 20 C.F.R. §1527(d)(2). Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); accord *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990) (affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine). In this case, as explained below, ALJ Smith properly discounted Dr. Reasor's findings because they were not supported by any clinical or objective findings and his functional limitations were also inconsistent with the other medical opinions of record (Tr. 33-34).

In February 1997, Plaintiff was injured at work while attempting to lift a 30-pound box that was over her head. (Tr. 447). As a result of prolonged back pain, Plaintiff began treating with Dr. Reasor in September 1997. Dr. Reasor diagnosed Plaintiff with an acute lumbar strain, now chronic, and facet joint arthropathy. (Tr. 449). The record contains several assessments by Dr. Reasor from 1999 and 2000.[1] (Tr. 459-67). Dr.

---

[1] Dr. Reasor's assessments, as well as the majority of the medical evidence in this matter, relate to Plaintiff's Worker's Compensation claim for her initial work injury in February 1997.

Reasor generally found that Plaintiff was capable of "light duty" work, however, he also assigned functional limitations consistent with a reduced range of sedentary work. *Id.* The ALJ gave Dr. Reasor's assessments "reduced weight" because they were "somewhat contradictory." (Tr. 33). Specifically, the ALJ cited to an assessment by Dr. Reasor indicating that Plaintiff could return to work at "light duty," yet on the same form, also finding Plaintiff capable of only sedentary level lifting and no more than four hours of work. (Tr. 33, 461). Upon review of the ALJ's decision, the Appeals Council remanded the matter and instructed the ALJ to recontact Dr. Reasor in order to clarify his purportedly inconsistent assessments. (Tr. 40).

Thereafter, ALJ Smith contacted Dr. Reasor and asked him "to clarify his initial notation that [Plaintiff] could perform light duty work and his subsequent indication that [she] was limited to sedentary work." (Tr. 17). Dr. Reasor responded to the ALJ's request, however, he did not address or clarify his assessments. Instead, Dr. Reasor stated that he had not treated Plaintiff in over nine years and was not familiar with her current physical condition. (Tr. 501). Dr. Reasor further added "I do not think any additional comments on my part would be helpful given the 9-10 years that have elapsed with no follow-up." *Id.* The ALJ's post-remand decision noted that Dr. Reasor did not provide any useful information to further explain or clarify his assessments. Nonetheless, the ALJ determined that "even assuming that Dr. Reasor consistently limited [Plaintiff] to less than a full range of sedentary work, Dr. Reasor's opinion is not supported by clinical findings and is inconsistent with the mild pathology shown on objective imaging studies." (Tr. 18).

Plaintiff, however, argues that the ALJ erred in discounting Dr. Reasor's opinions because his opinions are supported by the MRI and CT studies showing "facet

7

degenerative changes and degenerative desiccation of the L4-5 disc." (Doc. 14 at 2). Plaintiff further argues that "as the treating pain management specialist, Dr. Reasor's opinion is clearly entitled to controlling weight over the opinions of the one-time examining physicians. (Doc. 14 at 2). Plaintiff's assertions are only partially correct. As detailed above, a treating physicians' opinion is entitled to controlling weight only if it *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). Furthermore, a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).

In this case, the clinical findings cited by Plaintiff reveal only mild findings and fail to support Dr. Reasor's restrictive limitations. Notably, the CT scan of Plaintiff's lumbar spine on March 5, 1997, revealed "[n]o significant focal disc contour abnormality is demonstrated. Mild facet degenerative changes are present." (Tr. 267). On June 3, 1997, an MRI of Plaintiffs lumbar spine showed a large, anterior epidural fat space, but no significant disc herniation. (Tr. 282). The interpreting physician also noted that "[t]here is degenerative dessication of the L4-5 disc." (Tr. 282). Plaintiff fails to point to any additional objective evidence of record in support of Dr. Reasor's opinions. In fact, Dr. Reasor's own treatment notes contain very few objective findings and primarily consist of Plaintiff's subjective complaints of low back pain and tenderness and a decreased range of motion. (Tr. 422, 427-429, 435, 440-443, 447-449).

8

Furthermore, Dr. Reasor's opinions are also inconsistent with the remaining evidence or record. In September 1999, Dr. Lutz noted only mild tenderness in Plaintiff's lower back region; normal spine curvature and level pelvis; no neurosensory deficits; negative straight leg raising; heel and toe walking without difficulty; and some limited range of motion. (Tr. 475).[2] In addition, in March 2000, Dr. Mannava found minimal objective findings," as Plaintiff ambulated "very well on a level surface" with no assistive devices or gait deviations; a level pelvis; no paravertebral spasm or guarding; a negative straight leg test, both sitting and lying down; and normal leg sensory function (Tr. 469-73). He further indicated that "bas[ed] on subjective symptomatology and limited objective findings she does seem to have limitations," but also "wonder[ed] why she is unable to return to . . . some kind of at least medium duty job when she can tolerate the long distance travel to see [Dr. Reasor]." (Tr. 472).[3]

Thus, contrary to Plaintiff's allegations, ALJ Smith properly discounted Dr. Reasor's findings because they were not supported by any clinical or objective findings and his functional limitations were also inconsistent with the other medical opinions of record. (Tr. 33-34). *See also Cutlip,* 25 F.3d at 287. As such, the undersigned finds

---

[2] Dr. Lutz also indicated that Ms. Litschgi could not return to her previous jobs; could not lift over ten pounds; and could not do any repetitive bending, stooping, squatting, pushing, or pulling. (Tr. 476). The ALJ gave Dr. Lutz' limitations reduced weight because Dr. Lutz also believed that Plaintiff had not yet reached maximum medical improvement. (Tr. 475-76). Plaintiff does not challenge this finding.

[3] After Plaintiff began treating with Dr. Reasor he moved his practice to Louisville, Kentucky. Thereafter, Plaintiff traveled to Louisville from Cincinnati to see Dr. Reasor and refill her prescriptions.

that the ALJ reasonably declined to give controlling weight to Dr. Reasor's findings and such a determination is consistent with agency regulations and controlling law.

   *2.    Residual Functional Capacity (RFC) Finding*

Plaintiff further argues that the ALJ improperly interpreted the medical evidence of record and her RFC finding was based solely upon her own lay medical opinion. Specifically, Plaintiff argues that the ALJ rendered her finding for light work without reference to any medically determined RFC opinion bridging the medical data to specific functional limitations.[4] The Commissioner argues, however, that in formulating Plaintiff's RFC, the ALJ properly considered all the evidence, including treating source opinion evidence, consulting evaluation, treating history diagnostic test results, Plaintiff's testimony and her daily activities.

The undersigned agrees that an ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings. *Bledsoe v. Commissioner of Social Sec.*, No. 1:09-cv-564, 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011). Thus, an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, however she is not permitted to make her own evaluations of the

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§404.1567(b) (*re*:DIB), 416.967(b) (*re*: SSI). Social Security regulations provide that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

medical findings.  *Id.  See also Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009).  Furthermore, Social Security Ruling 96-8p requires that the ALJ's RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence ( e.g., daily activities, observations)."

Here, the ALJ engaged in the requisite narrative discussion of her RFC assessment - she described how the evidence supported such conclusions, she cited to specific medical facts, and she cited to nonmedical evidence, including Plaintiff's testimony and daily activities.  (Tr. 16-18, 32-34).  Notably, the ALJ cited to the mild clinical studies and lack of objective medical evidence in the record to support Dr. Reasor's restrictive functional limitations.  However, the ALJ did not discount Dr. Reasor's findings *in toto*, and incorporated the limitations that were supported by the evidence.  Thus, the ALJ's RFC limited Plaintiff to no overhead reaching in light of Dr. Reasor's frequent findings of lumbar tenderness and muscle spasms.  (Tr. 34).  The ALJ's RFC assessment also incorporated Dr. Mannava's findings that Plaintiff could perform "at least a medium duty job" in light of the limited objective findings.  (Tr. 33). Additionally, the ALJ considered Plaintiff's credibility in his RFC analysis, noting that Plaintiff's testimony that she traveled hours by car to see Dr. Reasor in Louisville, contradicts her complaints of back pain and resulting sitting limitations.  (Tr. 33).  Thus, contrary to Plaintiff's contention, the ALJ's RFC finding is not based upon her own lay opinion and is supported by the record.

Where, as here, there is a conflict in the medical evidence as to plaintiff's functioning, it is the ALJ's function to resolve such conflicts. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th

11

Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform work related activities. As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence.

### 3. Evaluation of Plaintiff's Depression

Plaintiff's final assignment of error asserts that the ALJ erred in failing to find that her depression was a severe impairment on or before her last date insured. The ALJ noted Plaintiff had not been diagnosed with depression during the relevant period and subsequently concluded that there is no evidence that Plaintiff's depression was a "severe" impairment on or before her last date insured. *Id.* The ALJ's decision in this regard is substantially supported.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). In the mental context, this means a significant limitation upon a plaintiff's ability to understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R §§ 404.1521(b)(3)-(b)(6), 416.921(b)(3)-(b)(6). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for

seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b).

Plaintiff argues that the ALJ's decision failed to acknowledge or consider an office noted from April 2002, wherein a nurse from the pain clinic noted that Plaintiff became tearful and suggested psychological referral. Plaintiff therefore maintains that the evidence of record establishes that she was suffering from depression a month after her last date insured and that her depression "very easily was present prior to her date last insured." (Doc. 10 at 4). As noted above and contrary to Plaintiff's assertion, a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young*, 925 F.2d at 151. Thus, assuming *arguendo*, that Plaintiff was formerly diagnosed with depression during the relevant period (which she was not), such a diagnosis, standing alone, is not indicative of a severe impairment. *See Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 779 (6th Cir. 2008) (diagnosis of an impairment does not indicate that it is severe). Furthermore, other than asserting that the record establishes that she suffered from depression beginning in April 2002, Plaintiff does not argue that her depression resulted in any functional limitations or otherwise affected her ability to perform basic work activities during the relevant period.

Based on the foregoing, the undersigned finds that the ALJ's determination that Plaintiff's depression was not a severe impairment is supported by substantial evidence

## III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                   *s/Stephanie K. Bowman*
                                   Stephanie K. Bowman
                                   United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DONNA LITSCHGI,                                                                        Case No. 1:10-cv-811

        Plaintiff,                                                         Dlott, J.
                                                                                                   Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).